# United States Court of Appeals for the Federal Circuit

---

**JAMES R. LANG,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2019-1992

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-13, Judge Amanda L. Meredith.

---

Decided: August 19, 2020

---

KENNETH DOJAQUEZ, Carpenter Chartered, Topeka, KS, for claimant-appellant.

DAVID PEHLKE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by ETHAN P. DAVIS, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.; JONATHAN KRISCH, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before NEWMAN, LOURIE, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

James R. Lang appeals a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") denying his request that his claim be remanded to the Board of Veterans' Appeals ("Board") for consideration of whether certain medical records generated by the Department of Veterans Affairs Medical Center ("VAMC") constitute "new and material" evidence relevant to his 1995 claim for disability compensation. *See Lang v. Wilkie*, No. 18-0013, 2019 WL 922532 (Vet. App. Feb. 26, 2019). For the reasons discussed below, we vacate the decision of the Veterans Court and remand.

I

Lang served in the U.S. Marine Corps from February 1966 to July 1968. Following his service in Vietnam, where he was badly injured, he received the Purple Heart and Combat Action Ribbon. In the years since, Lang has experienced serious, ongoing mental health issues, including nightmares, hypervigilance, and aggression. Lang sought psychiatric treatment at the Pittsburgh, Pennsylvania VAMC. On March 9, 1995, Lang was diagnosed with post-traumatic stress disorder ("PTSD"). The compensation and pension examiner explained:

> [T]he Veteran from a physical standpoint is permanently and totally disabled from any type of gainful employment [and] is also socially handicapped to a severe degree . . . . He has a very severe form of PTSD that he has treated himself with alcohol abuse over the years which has only contributed to other problems. He is riddled by depression and anxiety as well as the usual host of PTSD symptoms . . . . The Veteran from the standpoint of the PTSD alone is being presented with severe impairments in social and occupational adaptability, not

> to mention the horrendous physical deformities and disabilities he has sustained in service to his country.

J.A. 42.

On April 13, 1995, Lang filed a disability compensation claim for PTSD with the Pittsburgh Regional Office ("RO") of the VA. He was granted a 10% disability rating on June 18, 1996 ("1996 rating decision"). Lang did not immediately appeal the decision. He continued to receive treatment for PTSD at the Pittsburgh VAMC from July 1996 to June 1997.

On February 5, 2014, Lang filed a motion with the Pittsburgh RO to revise the 1996 rating decision based on an assertion of clear and unmistakable error ("CUE"). The RO denied Lang's motion in September 2014. Lang appealed the denial to the Board. In September 2015, the Board remanded to the RO to further develop the record—including retrieving VAMC medical records from January 1995 to June 1997. The RO issued a supplemental statement of the case in July 2016 and returned the case to the Board. The Board declined to revise Lang's rating decision based on CUE in September 2017. Lang appealed to the Veterans Court.

On March 20, 2019, the Veterans Court issued a decision affirming the Board's denial of Lang's request for an adjustment to the 1996 rating decision. Importantly, the Veterans Court rejected Lang's argument that the Board's CUE determination was procedurally improper because the 1996 rating decision had never been final. Lang argued that VA-generated medical records, created in the year following the 1996 rating decision, were constructively received by the VA such that the decision could not be final until the records were reviewed for new and material evidence under 38 C.F.R. § 3.156(b), which to date they have not been. The Veterans Court acknowledged that a non-final decision could not have been subject to CUE review

by the Board. The Veterans Court held that the records were not constructively received, however, because Lang failed to prove that the "VA had sufficient knowledge of the VA treatment records . . . to trigger the Board's duty to make the requested findings." *Lang*, 2019 WL 922532, at *4 (citing *Turner v. Shulkin*, 29 Vet. App. 207, 218–19 (2018)). Thus, the Veterans Court found no prejudicial error in the Board's failure to address the post-decision medical records.

Lang timely appeals the Veterans Court's decision as to the finality of the 1996 rating decision.

## II

Our jurisdiction to review decisions of the Veterans Court is limited by statute to legal questions, such as the proper interpretation of a statute or a regulation. 38 U.S.C. § 7292(c); *Sullivan v. McDonald*, 815 F.3d 786, 788–89 (Fed. Cir. 2016). We must "hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the [Veterans Court]" that we find to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (4) without observance of procedure required by law. 38 U.S.C. § 7292(d)(1). We review whether the Veterans Court exceeded its jurisdiction, a question of law, de novo. *Sullivan*, 815 F.3d at 789.

Lang argues that the Veterans Court erred as a matter of law when evaluating whether post-decision VAMC medical records prevented the 1996 rating decision from becoming final and, thus, prevented a CUE analysis. The government argues that the Veterans Court lacked jurisdiction to address that issue in the first instance and that, therefore, we too lack jurisdiction over this appeal. We first

address our jurisdiction and then the merits of Lang's appeal.

## A

The government argues that the Veterans Court exceeded its jurisdiction when it considered Lang's argument that the 1996 rating decision is still not final. It is undisputed that Lang made this argument for the first time on appeal to the Veterans Court. Although the government admits that the Veterans Court has broad discretion to address new arguments that were not raised before the Board, *see Maggitt v. West*, 202 F.3d 1370, 1378 (Fed. Cir. 2000), it argues that the fact that Lang's substantive argument to the Board had been predicated on the assertion of CUE entirely eliminates the Veterans Court's discretion to address Lang's procedural concern. It also characterizes Lang's finality argument as a new CUE claim, which needed to be addressed by the Board in the first instance. We disagree.

The government is correct that each allegation of CUE must be made, with specificity, to the Board for the Veterans Court to exercise jurisdiction over it. *See, e.g., Andre v. Principi*, 301 F.3d 1354, 1361 (Fed. Cir. 2002) ("[E]ach 'specific' assertion of CUE constitutes a claim that must be the subject of a decision by the [Board] before the Veterans Court can exercise jurisdiction over it."). Lang's procedural argument to the Veterans Court was not, however, a new claim of CUE. It was an argument that no CUE inquiry need occur because the 1996 rating decision is not final. *See* 38 C.F.R. § 3.105(a) (allowing CUE review of final decisions); *Beraud v. McDonald*, 766 F.3d 1402, 1407 (Fed. Cir. 2014) ("[U]nder § 3.156(b), the VA must provide a determination that is directly responsive to the new submission and . . . , until it does so, the claim at issue remains open."). As Lang correctly notes, "[t]he Board must establish the finality of the June 1996 rating decision because only final decisions are subject to CUE. If there is no final

decision, there can be no CUE; and the Board would have been required to dismiss the CUE motion in its entirety."[1] Appellant's Reply Br. 2 (citation omitted). The Veterans Court, therefore, was within its discretion to consider Lang's argument. And because the Veterans Court properly exercised jurisdiction over Lang's argument, we have authority to review any underlying legal issues on appeal. *See* 38 U.S.C. § 7292(c).

B

The VA has a long history of considering documents that were not *literally* before an examiner to be *constructively* part of a claimant's record. *See Bell v. Derwinski*, 2 Vet. App. 611, 613 (1992). In *Bell*, the Veterans Court held, "where the documents proffered by the appellant are within the Secretary's control and could reasonably be expected to be a part of the record 'before the Secretary and the Board,' such documents are, in contemplation of law, before the Secretary and the Board and should be included in the record." *Id.*; *see also id.* ("[B]ecause [the disputed records] were clearly generated by the VA, the Secretary had constructive, if not actual, knowledge of those items."). After *Bell*, the Secretary issued Office of General Counsel

---

[1]    The government argues that if we require the Board to establish the finality of a decision before applying the CUE analysis it "will result in massive disruptions to prior decision[s] and impose an unworkable standard going forward." Appellee's Br. 14. We do not think such a disruption is likely. The period during which a claim remains open where new and material evidence is developed is very short. The requirement that a decision be final before CUE must be proven is not new, moreover. Any resulting disruption from a decision requiring the Board to establish it has authority to complete a CUE analysis is, therefore, a problem of the Board's own creation; policing the VA's own records for one year post-decision should not be difficult.

Opinion 12-95, which officially adopted the *Bell* rule for all records in the VA's possession. Vet. Aff. Op. Gen. Couns. Prec. 12-95, 1995 WL 17875505, at *2 (May 10, 1995). The Secretary explained that any records created by the VA, and related to a matter, are constructively part of the record for that matter.

Over the years, the Veterans Court has refined the *Bell* principle. It has found some documents insufficiently related to a given matter to fall within the rule. Non-VA documents, for example, are not generally subject to the *Bell* rule and must normally actually be presented to the VA adjudicator. *See Bowey v. West*, 11 Vet. App. 106, 108–09 (1998) (holding that mere reference to non-VA documents is insufficient to incorporate them into a record). And records generated by the VA as to one claimant are not normally constructively part of every claimant's record. *See Monzingo v. Shinseki*, 26 Vet. App. 97, 102 (2012) ("[W]hen a document is generated by [the] VA, it will not be considered constructively before the Board in a particular claimant's case unless the document has a direct relationship to the claimant's appeal."); *Goodwin v. West*, 11 Vet. App. 494, 496 (1998). The Veterans Court has never, however, required that a veteran, or anyone else, take affirmative action for *the veteran's own* VA-generated medical records to become part of the record.

Recently, in *Turner v. Shulkin*, 29 Vet. App. 207 (2018), the Veterans Court considered whether certain documents created by the VA after a decision are "received" for purposes of 38 C.F.R. § 3.156(b). The regulation, in relevant part, provides:

> New and material evidence received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed . . . , will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period.

38 C.F.R. § 3.156(b).  The Veterans Court held, consistent with *Bell*, that certain documents may be constructively received by the VA during the one-year period for appeal. *Turner*, 29 Vet. App. at 216–17.  But, unlike *Bell*, the *Turner* court further held that there must be a "triggering principle involved." *Id.* at 217.  It explained:

> [C]onstructive receipt in the context of 38 C.F.R. § 3.156(b), dealing exclusively with VA treatment records, requires knowledge by VA adjudicators at the [Veterans Benefits Administration ("VBA")] of the existence of those VA treatment records within the one-year appeal period.  In determining whether constructive possession has been triggered as to VA treatment records, those records must have been generated by a VA medical facility and VA adjudicators at the VBA must have sufficient knowledge that such records exist.  In addition, based on the Federal Circuit's decision in *Sullivan*, VA's constructive receipt of such records is not tied to their relevance to the claim.

*Id.* at 218.  As to the knowledge requirement, the Veterans Court noted that the determination is a factual question and should be guided by the general principles underlying the VA's duty to assist. *Id.*

Lang argues that *Turner*, as to the "triggering principle," is contrary to established Veterans Court law.  We agree.  The Veterans Court provided very little explanation for its decision to add an additional actual knowledge requirement to the otherwise well-established *Bell* doctrine of constructive receipt.  It merely stated, "[t]he impact of applying the correct legal rule on an agency is not a reason to turn a blind eye to the law.  Nevertheless, the practical impact of a legal rule can certainly frame how that legal rule is applied." *Id.* at 217.  It then rejected without explanation Turner's argument "that constructive receipt of VA treatment records is, essentially, co-extensive with the

creation of records by VA" personnel by concluding, "something more than mere creation is required." *Id.* We hold that the Veterans Court in *Turner* articulated an erroneous statement of the law when it failed to adequately address *Bell* and its progeny.

The Veterans Court has consistently held, with the Secretary in full agreement, that, in the context of records created prior to a decision, *all* relevant and reasonably connected VA-generated documents are part of the record and, therefore, constructively known by the VA adjudicator. *See e.g., Bowey*, 11 Vet. App. at 108–09; Vet. Aff. Op. Gen. Couns. Prec. 12-95, 1995 WL 17875505, at *2. The Veterans Court provided no reasoning to support a different test in the post-decision context. We see none.[2] Thus, while we agree with the Veterans Court's conclusion in *Turner* that the *Bell* doctrine of constructive receipt applies to 38 C.F.R. § 3.156(b), we hold that records received in the post-decision context must be evaluated under the same framework applied to records generated prior to a decision.[3] Evidence is constructively received by the VA adjudicator post-decision if it (1) was generated by the VA or was submitted to the VA and (2) can reasonably be expected to be connected to the veteran's claim.[4] *See Monzingo*, 26 Vet. App. at 101–

---

[2]    Although the government argues that we are not obligated to apply *Bell*, it does not provide any compelling reason for us to apply different rules in the two contexts.

[3]    We note that the government seems to agree with this understanding of the law of constructive receipt under *Bell* and does not seriously defend the *Turner* court's "triggering principle." To the extent the government contends that we are not bound to follow *Bell* or bound to extend *Bell* to the circumstances of *Turner*, the government did not challenge those decisions on appeal.

[4]    We do not attempt to exhaustively consider the various circumstances in which a veteran may establish

02. There is no requirement that the VA adjudicator have any actual knowledge of the evidence for this principle to apply.

Applying the principle to this case, Lang's post-decision medical records were constructively received by the VA adjudicator prior to the expiration of the one-year appeal period. Medical records created by the VAMC as a result of the treatment of a specific veteran are necessarily received by the VA adjudicator of that veteran's claims because all such records can reasonably be expected to be connected to the veteran's claims.[5] *Cf. Sullivan*, 815 F.3d at 793 (holding that the VA's duty to assist in retrieving a veteran's medical records is not limited to records that are relevant to a specific claim). A veteran's own medical records, generated by the VA itself, are always reasonably related to a veteran's claim.

---

constructive receipt for purposes of 38 C.F.R. § 3.156(b). The Board and Veterans Court should continue to develop this area of the law, consistent with *Bell* and the basic guidance provided in this opinion.

[5] The government argues that this rule may introduce uncertainty into the finality of many claims. Appellee's Br. 31–33. That a correct application of law may result in additional work for an agency is not a reason to change the law. Further, a widespread resurrection of claims is unlikely. Claims will only be subject to further proceedings *if* new and material evidence exists in a veteran's VAMC medical records created in the year following a decision. Certainly, the VA may be asked with greater frequency to acquire and review those records. It is likely, however, that only a small portion of the cases will reveal new and material evidence. In such cases, it is unquestionably the correct result, both as a matter of policy and the law, for the veteran to receive the benefit of that additional evaluation.

Here, Lang received a decision on his claim on June 18, 1996. It is undisputed that he continued treatment for PTSD at the Pittsburgh VAMC during the next year, from June 1996 to June 1997. Any records created by the Pittsburgh VAMC as to Lang during that one-year period were therefore in the possession of the VA and constructively received by the VA adjudicator in reference to Lang's claim for purposes of 38 C.F.R. § 3.156(b).

A claim, such as Lang's, remains open until the VA determines whether post-decision evidence received within the one-year appeal period is "new and material." *See Beraud*, 766 F.3d at 1407. The Board made no such determination as to Lang's post-decision medical records. The 1996 rating decision was, thus, not final and a CUE analysis was not required. *See* 38 C.F.R. § 3.105(a) (allowing CUE review of "final" decisions). Given this, the Veterans Court erred when it declined to remand Lang's claim to the Board to review the post-decision VAMC medical records for new and material evidence.

## III

We conclude that a VA adjudicator does not need any actual knowledge of VAMC medical records to establish constructive receipt. The well-established *Bell* rule for when the VA has constructive knowledge of VA-created documents contains no such requirement. We hold there is no legal basis for adding such a requirement in the post-decision context. Accordingly, we vacate the decision of the Veterans Court and remand for the Veterans Court to remand this case to the Board for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

Costs to appellant.