# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 21-4616

CHRISTINE VARAD, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided May 15, 2024)

*Christine Varad, pro se.*

*Richard A. Sauber,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *Megan C. Kral*, Deputy Chief Counsel; and *Abhinav Goel,* all of Washington, D.C., were on the brief for the appellee.

*Kenneth H. Dojaquez*, of Topeka, Kansas, for the Veterans Consortium Pro Bono Program as amicus curiae.

Before BARTLEY, *Chief Judge*, and GREENBERG and JAQUITH, *Judges*.

BARTLEY, *Chief Judge*: Self-represented appellant Christine Varad, child of deceased veteran William A. Mooney, appeals a December 15, 2020, Board of Veterans' Appeals (Board or BVA) decision that denied her entitlement to dependency and indemnity compensation (DIC) benefits, finding that she was not rendered permanently incapable of self-support prior to attaining age 18.[1] Record (R.) at 3-18. Her appeal of that issue to this Court is timely,[2] and we have jurisdiction to review the Board decision. *See* 38 U.S.C. §§ 7252(a), 7266(a).

Ms. Varad first appealed to this Court in 2019, seeking review of a February 2019 Board decision as to the DIC issue. In May 2020, the Court remanded the claim due to Board error. *Varad v. Wilkie*, No. 19-1376, 2020 WL 2516551 (Vet. App. May 18, 2020) (*Varad I*). After the Board

---

[1] An adult child of a deceased veteran may be entitled to DIC benefits if she is unmarried and "became permanently incapable of self-support" prior to attaining age 18. 38 U.S.C. § 1314(b).

[2] Ms. Varad's January 21, 2021, motion for Board reconsideration was denied on June 30, 2021, *see infra* at 4, and she subsequently filed her Notice of Appeal (NOA) with this Court on July 13, 2021, within 120 days of the Board Chairman delegate's ruling on her reconsideration motion. Thus, her NOA is timely. *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991).

issued a second decision on the same issue in December 2020, she again appealed to this Court for review. This time the matter was referred to a three-judge panel to address whether an April 2019 private medical record submitted to this Court during her 2019 appeal, *Varad I*, was constructively before the Board following the May 2020 Court remand decision. Because we conclude that the favorable April 2019 medical record was constructively before the Board in December 2020, but was not considered, remand is required.

## I. FACTUAL BACKGROUND

### A. Background Facts

Mr. Mooney served honorably in the U.S. Army from October 1942 to February 1946. R. at 1001. Ms. Varad was born in April 1955, *see* R. at 820, and she reached age 18 in April 1973. In December 1975, Mr. Mooney died. R. at 811.

In September 1971, Ms. Varad, then 16 years old, slipped and fell at work, sustaining a right forearm puncture wound, open fractures of her right radius and ulna, and a right knee contusion; patellar dislocation was suspected. She was admitted to the hospital and underwent procedures to clean the wound and fixate the fractures. She was discharged 12 days later with a right leg cylinder cast. R. at 668. Ms. Varad subsequently developed osteomyelitis (infection of the bone) in the radius, requiring another surgery. Following this surgery, Ms. Varad was treated with "extensive antibiotic treatment to heal the bone and wound[,] which eventually occurred." R. at 700.

In September 2015, Ms. Varad filed a claim for DIC as a dependent child of the veteran, R. at 812-16, which was denied by a VA regional office in November 2015, R. at 790-91. In January 2016, Ms. Varad filed a Notice of Disagreement, arguing that the physical disability she incurred when 16 years old prevented her from being gainfully employed. R. at 779-82. Following a July 2016 Statement of the Case, R. at 395-416, she timely perfected an appeal to the Board, R. at 325-26. In February 2019, the Board denied the claim. R. at 87-93.

### B. Ms. Varad's Prior Appeal

In March 2019, Ms. Varad appealed the February 2019 Board denial to this Court and in April 2019, counsel for Ms. Varad filed an appearance. On June 23, 2019, and prior to the Court receiving a later withdrawal of appearance by Ms. Varad's counsel, Ms. Varad submitted a statement to the Court that she was no longer represented by counsel. She also submitted a

document titled "June 22, 2019, addendum to pro-se brief on appeal filed on March 9, 2019[,] offering new and material evidence on appeal." *Varad I*, U.S. Vet. App. No. 19-1376 (June 23, 2019) (capitalization altered).[3] Attached to that document were three exhibits, including an April 2019 Massachusetts Department of Transitional Assistance, Emergency Aid to the Elderly, Disabled and Children (EAEDC) Report, completed by Dr. Walter Panis, and Dr. Panis's narrative summary. *Id*. at Exhibit 1. The narrative summary details a physical examination of Ms. Varad, a description of her workplace injury, and Dr. Panis's opinion regarding Ms. Varad's overall impairment level, including physical impairments affecting her ability to work. Because Ms. Varad's counsel had not yet withdrawn his appearance, her submissions were labeled by the Court as "RECEIVED: Correspondence from appellant." The next day, on June 24, 2019, Ms. Varad's counsel moved to withdraw his appearance, and on June 25, 2019, the Court granted the motion and ordered Ms. Varad to file her informal brief.

On January 7, 2020, Ms. Varad filed her opening brief, asserting error in the February 2019 Board decision. On March 10, 2020, the Secretary filed his brief, conceding that the Board provided inadequate reasons or bases for its decision with respect to Ms. Varad's prior work history and whether a prior marriage barred entitlement to DIC. In May 2020, the Court accepted the Secretary's concession of Board error, set aside the February 2019 Board decision, and remanded the claim for readjudication. R. at 76-84.

### C. Agency Action Following *Varad I*

In August 2020, the Board notified Ms. Varad that her case had returned to the Board for readjudication. R. at 22-23. In this notification letter, the Board informed Ms. Varad that "[c]opies of the Court's [remand] order and other pertinent pleadings and briefs filed with the Court will be associated with [her] . . . claims file for review and consideration" in its readjudication of her claim. R. at 22.

In the December 2020 decision on appeal, the Board found no evidence of severe disability, incapacity, or functional impairment stemming from Ms. Varad's workplace injury and subsequent surgeries, and concluded that the preponderance of the evidence was against her claim. R. at 3-19. The Board decision did not mention the April 2019 EAEDC report or Dr. Panis's narrative summary.

---

[3] Docket number 19-1376 does not list a March 9, 2019, informal brief filing.

In January 2021, Ms. Varad filed with the Board a motion for reconsideration. With her motion, she included the full 11-page April 2019 EAEDC report completed by Dr. Panis and his 2-page narrative summary. *Varad v. McDonough*, U.S. Vet. App. No. 21-4616 (*Varad II*) (appellant submissions dated July 19, 2021). She also included a two-page January 2021 statement from Dr. Panis. *Id.* In June 2021, the motion was denied, in part because the Board determined that the April 2019 and January 2021 medical records, while new evidence, did not warrant reconsidering the December 2020 Board decision. *Varad II*, Copy of Board Decision, at 1-5 (Aug. 11, 2021) (providing a copy of the June 2021 Board Chairman delegee ruling on the motion for reconsideration); *see* 38 C.F.R. § 20.1001(b) (2023).

### D. Current Appeal

On July 13, 2021, Ms. Varad appealed the December 2020 Board decision. On July 19, 2021, she filed a self-styled motion under Rule 8 of the Court's Rules of Practice and Procedure (Rules), requesting "suspension of Secretarial action and/or voiding B.V.A. December 15, 2020[,] decision and denial of motion for reconsideration for intentional B.V.A. failure to comply with fully enforceable [Court] May 18, 2020[,] decision and judgment." *Varad II*, Appellant's Motion (July 19, 2021) (capitalization altered). In her motion, Ms. Varad argued, in part, that the Board erred in finding that she had recovered from her 1971 injuries because it ignored Dr. Panis's April 2019 and January 2021 medical evidence documenting the severity and permanency of her injuries. *Id.* at 3. The parties subsequently submitted briefs, and the case was submitted to a single judge for consideration. The single judge ordered two responses from the Secretary as to whether the April 2019 EAEDC report and Dr. Panis's summary were actually or constructively before the Board when it rendered its December 2020 decision. In both responses, the Secretary asserted that these documents were not before the Board. *See Varad II*, Secretary's Response (Mar. 22, 2022) (Sec. First Resp.); *Varad II*, Secretary's Response (June 24, 2022) (Sec. Second Resp.).

On July 28, 2022, the case was submitted to a panel of this Court to consider the constructive possession issue. On September 6, 2022, the panel stayed proceedings to allow the Veterans Consortium Pro Bono Program (Program) to explore the possibility of counsel volunteering to represent Ms. Varad. *See* U.S. VET. APP. R. 5. Because Ms. Varad and the Program could not agree on representation, the Court, on October 28, 2022, ordered the Program to explore the possibility of locating amicus curiae to present arguments on Ms. Varad's behalf. In March

2023, amicus counsel filed an amicus brief. In April 2023, the Secretary responded to amicus's brief (Sec. Resp. to Amicus).

## II. MOTION TO SUSPEND SECRETARIAL ACTION

As noted, on July 19, 2021, Ms. Varad filed a self-styled Rule 8 motion. As relevant, Rule 8 provides that, after an appeal has been filed, a party may file a motion to suspend Secretarial or Board action pending the appeal. U.S. VET. APP. R. 8(a).[4] The crux of Ms. Varad's motion is that the Board in its December 2020 decision and the Board Chairman delegate in his June 2021 reconsideration ruling failed to comply with the Court's May 2020 *Varad I* decision and so, apparently, she seeks to suspend these decisions.

The Court will deny the motion as not contemplated by the Rules. Initially, it is unclear what exact Board action Ms. Varad seeks to suspend, as the Board has already taken the action to which she objects—denying her benefits claim. Even were the Court to recharacterize her motion as seeking to suspend the Secretary or the Board from continuing to deny the claim and order an award of benefits, such characterization is not contemplated by a natural reading of Rule 8. *Accord Rudisill v. McDonough*, 34 Vet.App. 176, 182-83 (2021). Moreover, given the arguments advanced and the objective of the Rule 8 motion, it seems more aptly characterized as an appellate pleading, especially since she quotes her Rule 8 motion in its entirety in her opening brief. Thus, the Court will carefully consider her arguments within the context of the discussion below and will deny her Rule 8 motion.

## III. LEGAL LANDSCAPE

The Board has a duty to base its decision in any particular case "on the entire record of proceeding and upon consideration of all evidence and material of record." 38 U.S.C. § 7104(a). The record of proceeding obviously includes documents actually in the record. But documents not literally in the record may nonetheless be deemed constructively part of the record under certain circumstances. *See Euzebio v. McDonough*, 989 F.3d 1305, 1318 (Fed. Cir. 2021); *Lang v. Wilkie*, 971 F.3d 1348, 1352-53 (Fed. Cir. 2020) (citing *Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992)).

---

[4] On January 22, 2024, the Court sought public comment on proposed changes to various Rules, including Rule 8. U.S. VET. APP. MISC. NO. 05-24 (Jan. 22, 2024). Those proposed changes to Rule 8 are not relevant to this appeal.

"The constructive possession doctrine provides a safeguard that ensures all record documents reasonably expected to be part of a veteran's claim are included in the administrative record." *Conyers v. McDonough*, 91 F.4th 1167, 1171 (Fed. Cir. 2024) (citing *Euzebio*, 989 F.3d at 1325-26). "The Court assesses constructive possession as part of its role to ensure that the Board bases its decision on the evidence properly within the administrative record and, thus, that its decision is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Davis v. McDonough*, 36 Vet.App. 142, 150 (2023) (citing 38 U.S.C. § 7261(a)(3)(A); *Euzebio*, 989 F.3d at 1321-23). In *Bell*, one of this Court's earliest cases, we recognized this doctrine of constructive possession. 2 Vet.App. at 612-13. And in subsequent cases, this Court and the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) have distilled the necessary elements. *See, e.g.*, *Euzebio*, 989 F.3d at 1318-24; *Davis*, 36 Vet.App. at 150-51.

The first element for constructive possession is that the evidence must pre-date the date of the Board decision. *Davis*, 36 Vet.App. at 150 (citing *Euzebio*, 989 F.3d at 1319; *Bell*, 2 Vet.App. at 612-13). This is the most straightforward of the necessary elements, as the Board cannot be deemed in possession of a document that did not exist when it rendered its decision.

Second, the evidence must be within the Secretary's control. *Id.* (citing *Euzebio*, 989 F.3d at 1318-19; *Lang*, 971 F.3d at 1354; *Bell*, 2 Vet.App. at 613). This includes evidence submitted to VA and evidence of which VA has actual or constructive knowledge. *See Euzebio*, 989 F.3d at 1318-19 & n.6. As we stated in *Bell*, "'[t]he Court cannot accept the Board being "unaware" of certain evidence, especially when such evidence is in possession of the VA, and the Board is on notice as to its possible existence and relevance.'" 2 Vet.App. at 612 (quoting *Murincsak v. Derwinski*, 2 Vet.App. 363, 372-73 (1992)). In *Lang*, the Federal Circuit emphasized that constructive possession does not hinge on the Board or the VA adjudicator having notice, stating that "[t]here is no requirement that the VA adjudicator have any actual knowledge of the evidence for this principle to apply." 971 F.3d at 1354.

Third, the evidence must be relevant and reasonably connected to the claim. *Davis*, 36 Vet.App. at 150 (citing *Euzebio*, 989 F.3d at 1321, 1324). In *Euzebio*, the Federal Circuit clarified that relevance is measured by whether the evidence tends to prove or disprove a material fact. 989 F.3d at 1324 (citing *AZ v. Shinseki*, 731 F.3d 1303, 1311 (Fed. Cir. 2013); FED. R. EVID. 401). It further emphasized that evidence need not be directly related to the specific claimant to be relevant, *id.*, but acknowledged that evidence that had "too tenuous" a connection to the claim

6

would not be relevant, *id*. at 1326 (citing *Bowey v. West*, 11 Vet.App. 106, 109 (1998)). *See Davis*, 36 Vet.App. at 150. The Federal Circuit also endorsed this Court's framing of the reasonableness inquiry as whether it was reasonable to expect VA to have investigated, gathered, and considered that evidence. *Euzebio*, 989 F.3d at 1326 (citing *Bowey*, 11 Vet.App. at 109); *see id*. at 1320 (citing *Goodwin v. West*, 11 Vet.App. 494, 495-96 (1998) (per curiam) for the proposition that it is not reasonable to expect other veterans' VA documents to be part of Mr. Goodwin's administrative record).

## IV. ARGUMENTS

### A. Ms. Varad's Argument

Under a liberal construction of her brief, *see De Perez v. Derwinski*, 2 Vet.App. 85, 86 (1992), Ms. Varad argues that reversal is appropriate because the Board clearly erred in concluding that she was not permanently incapable of self-support prior to age 18. As relevant, she argues that the Board failed to adequately support its decision because it overlooked Dr. Panis's April 2019 opinion that supports her entitlement. Appellant's Informal Brief (Br.) at 2-8. She argues that she mailed the April 2019 records to VA in January 2021 with her motion for Board reconsideration and that the Secretary's position that the file does not contain these records is intentionally fraudulent.

### B. Amicus's Argument

Amicus argues that Dr. Panis's April 2019 medical evidence satisfies the elements of constructive possession because that evidence was within the Secretary's control as it was provided to the VA Office of General Counsel (VAOGC) during the pendency of *Varad I*, Amicus Br. at 9, and there is no logical or legal basis to sever VAOGC from other parts of VA for constructive possession purposes, *id*. at 4-9 (citing 38 U.S.C. §§ 301(c), 311); is relevant to Ms. Varad's DIC claim, *id*. at 10-11 (asserting that the Secretary does not challenge relevance); and is reasonably connected to Ms. Varad's DIC claim because all evidence relevant to a claim is reasonably connected to that claim, *id*. at 11-12 (arguing that "*Euzebio* seem[ed] to equate" relevance and reasonableness). Accordingly, amicus asserts that the April 2019 evidence was constructively before the Board when it rendered its December 2020 decision and that the Board provided inadequate reasons for its decision when it failed to address that favorable evidence.

7

### C. Secretary's Argument

The Secretary argues that Dr. Panis's April 2019 medical evidence was not within the Secretary's control and could not reasonably have been expected to be part of the record. As to whether it was within the Secretary's control, he argues that, because the evidence was submitted as part of nonconforming correspondence, it was never filed with the Court, Sec. First Resp. at 2-3 (citing U.S. VET. APP. R. 45(j)) and that, because the Court is not part of VA, the documents were not presented to VA, *id*. He maintains that because VAOGC is not part of the administrative adjudication process and has no role in the adjudication of VA claims, VAOGC cannot "serve as a receptacle for building or supplementing an administrative record." Sec. Second Resp. at 4 (citing 38 U.S.C. §§ 301, 311); Sec. Resp. to Amicus at 6-10. He acknowledges that the Secretary is notified of documents that are docketed in a Court appeal but maintains that such a situation "is not tantamount to those documents being within the Secretary's control as those documents were never submitted to the VA." Sec. Second Resp. at 5.

As to whether the April 2019 evidence could reasonably have been expected to be part of the record, he argues that "*Bell*'s reasonableness test does not require pleadings filed before this Court to become part of the record below," Sec. First Resp. at 4, and that it would not be reasonable to expect documents submitted to the Court, but not properly filed, to become part of the administrative record in a subsequent action, Sec. Second Resp. at 5-6; Sec. Resp. to Amicus at 10-13. To conclude otherwise, he argues, would seem to contravene *Skaar v. Wilkie*, 31 Vet.App. 16, 18-19 (2019) (en banc) (per curiam order), where the Court instructed appellant to submit to the Board evidence that he had submitted to the Court, Sec. Second Resp. at 5-6; *see* Sec. Resp. to Amicus at 3-6 (arguing that consideration of "new records" at the appellate level is incongruous with appellate practice and procedure).

## V. ANALYSIS

### A. The April 2019 Medical Evidence Pre-Dates the December 2020 Board Decision; The January 2021 Medical Record Does Not

There is no debate that Dr. Panis's April 2019 medical report pre-dated the December 2020 Board decision. Therefore, as to that evidence, the first element of constructive possession, that the evidence pre-date the date of the Board decision, is met.

Ms. Varad argues that the Board in December 2020 possessed Dr. Panis's January 2021 medical record; however, that is impossible because January 2021 clearly post-dates the December

8

2020 Board decision. And although Ms. Varad submitted the January 2021 record to the Board with her January 2021 motion for reconsideration, which the Board Chairman delegee acknowledged in denying the motion, the Board cannot be deemed to have been constructively in possession of that record in December 2020 because the record did not exist at that time. *Accord Aviles-Rivera v. McDonough*, 35 Vet.App. 268, 275-77 (2022) (concluding that a National Academy of Sciences report could not be constructively before the Board because it was created after the evidentiary record closed). Thus, the Court will not further discuss the January 2021 medical record as it clearly does not qualify for constructive possession.

### B. The April 2019 Medical Evidence Was Within the Secretary's Control in December 2020

Ms. Varad submitted the April 2019 evidence to the Court in June 2019, during her pending appeal in *Varad I*. As noted, the Secretary asserts that, because that submission was nonconforming under Court Rules, it was not filed with the Court and was never within the Secretary's control, Sec. First Resp. at 3; Sec. Second Resp. at 5, and that receiving service of documents during the Court's appeal process does not equate to Secretarial control of a document that was never submitted to VA, Sec. Second Resp. at 3-5. In addressing these arguments, we review the Court's E-Rules, the caselaw the Secretary relies on, and the Court's longstanding view of VA as one entity for pleading purposes.

### 1. The Court's E-Rules

The Court's E-Rules govern the submission of documents submitted through the Case Management/Electronic Case Filing (CM/ECF) system, the Court's automated system for case management and document filing. U.S. VET. APP. E-R 1(a)(1). Generally, all represented parties, including the Secretary, must file documents through CM/ECF. U.S. VET. APP. E-R 2(c); *see* U.S. VET. APP. R. 25(a)(1).[5] But self-represented parties, like Ms. Varad, are exempt from this requirement and must submit documents using other methods. U.S. VET. APP. E-R 2(b); *see* U.S. Vet. App. R. 25(a)(2); *see also* U.S. VET. APP. E-R 1(a)(13) (providing that a self-represented party is a "Non-CM/ECF User"). Self-represented parties may mail, fax, or email documents to the Court, U.S. VET. APP. R. 25(b); U.S. VET. APP. E-R 2(b), and, once it is received, the Clerk of the Court will file the document in CM/ECF, U.S. VET. APP. R. 25(a).

---

[5] Upon motion and a showing of good cause, the Court may exempt represented parties from filing through CM/ECF, U.S. VET. APP. E-R 2(e), but the Secretary is always considered a CM/ECF User, U.S. VET. APP. E-R 6(b).

"When a document is submitted through the CM/ECF system, the system will electronically generate a notice of docket activity." U.S. VET. APP. R. 25(c)(1); *see* U.S. VET. APP. E-R 5(a). "That notice shall constitute both service and proof of service of the submitted documents with regard to any party in that case who is also a CM/ECF User." U.S. VET. APP. R. 25(c)(1); *see* U.S. VET. APP. E-R 6(a).

The Secretary does not dispute that in *Varad I* the April 2019 evidence was entered onto the Court's docket and electronic notice of docket activity was sent to Secretary's counsel. Indeed, this is consistent with the Court's practice under our E-Rules. *See* U.S. VET. APP. E-R 1(a)(6); *see also* U.S. VET. APP. R. 25(c)(1)). The notice of docket activity meant that the Secretary was provided service of the April 2019 evidence, *see* U.S. VET. APP. 25(c)(1); U.S. VET. APP. E-R 6(a), meaning the Secretary was provided a copy of the April 2019 evidence, *see generally* Service & E-Service, BLACK'S LAW DICTIONARY (defining "service" as "[t]he formal delivery of a writ, summons, or other legal process, pleading, or notice to a litigant or other party interested in litigation" and defining "e-service" as "[s]ervice accomplished by electronic means").

### 2. The "Control" Element of Constructive Possession

In *Euzebio*, the Federal Circuit stated that "[t]he Veterans Court has found evidence 'within the Secretary's control' when 'the Secretary ha[s] constructive, if not actual, knowledge' of that evidence." 989 F.3d at 1318-19 (quoting *Bell*, 2 Vet.App. at 613). As well as addressing evidence generated by VA, *Bell* addressed constructive possession as to evidence submitted *to* VA. *See* 2 Vet.App. at 613. Similarly, in *Lang*, the Federal Circuit noted that constructive possession may apply to evidence submitted *to* VA. 971 F.3d at 1354.

The Secretary argues that *Lang* held that non-VA-generated evidence "generally must be presented to a VA *adjudicator* for the constructive possession doctrine to apply," Sec. First Resp. at 3 (emphasis added); *see* Sec. Resp. to Amicus at 9. However, he overstates the holding in that case. *Lang* held that "[e]vidence is constructively received by the VA adjudicator . . . if it (1) was generated by the VA or was submitted to the VA and (2) can reasonably be expected to be connected to the veteran's claim," 971 F.3d at 1353-54. Thus, constructive possession applies more broadly than the Secretary argues, to documents submitted to VA, and there is no limitation that the evidence in question must have been submitted directly to a VA adjudicator.

To the extent that the Secretary relies on the Federal Circuit's references to *Goodwin* and *Bowey*, *see* Sec. Resp. to Amicus at 11-12, that reliance is inapt because those cases dealt with the

10

reasonableness element of constructive possession rather than the question of whether the evidence was within Secretarial control. In *Goodwin*, we concluded that documents in another veteran's claims file, and not submitted to VA by Mr. Goodwin, "could not 'reasonably be expected to be a part of the record before the Secretary and the Board.'" 11 Vet.App. at 496 (quoting *Bell*, 2 Vet.App. at 613). And in *Bowey*, we concluded that mere reference in expert medical opinions to non-VA scientific treatise evidence did not satisfy the reasonableness standard because it was not "reasonable to expect the Secretary or the Board to have investigated, gathered, and considered" the treatise evidence. 11 Vet.App. at 108-09. Although it may be more difficult to demonstrate that non-VA-generated evidence is within the Secretary's control, a VA adjudicator need not have actual knowledge of evidence for constructive possession to apply. *Lang*, 971 F.3d at 1354. In fact, if non-VA-generated evidence is submitted directly to a VA adjudicator, that adjudicator would have actual possession of that evidence and the principle of constructive possession would be moot.

### 3. Service of the April 2019 Medical Evidence on VAOGC Counsel

The Secretary argues that, although VAOGC is a part of VA, *see* 38 U.S.C. § 311, it is a VA entity incapable of "serv[ing] as a receptacle for building or supplementing an administrative record," Sec. Second Resp. at 4; *see* Sec. Resp. to Amicus at 6-10. He adds that VAOGC plays no role in the adjudication of VA claims, a task reserved for the Veterans Benefits Administration (VBA) and the Board. Sec. Second Resp. at 4; *see* Sec. Resp. to Amicus at 8 (arguing that VAOGC is not entitled to make initial findings and decisions as to compensation claims). However, whether the Secretary has control over certain evidence is not determined by whether the part of VA that receives the evidence in question is responsible for maintaining the administrative record or deciding claimants' entitlement to compensation. [6] Contrary to the Secretary's arguments, Secretarial control is not limited to situations where documents are submitted to VBA or the Board. The Secretary's attempts to differentiate VAOGC from VBA and the Board for constructive possession purposes ignore that "[t]he jurisprudence of this Court and the Federal Circuit has consistently acknowledged VA as one entity for pleading purposes." *Fithian v. Shinseki*, 24 Vet.App. 146, 152 (2010), *rev'd on other grounds by Anania v. McDonough*, 1 F.4th 1019

---

[6] The part of VA with knowledge of a particular document may factor into the relevance inquiry discussed below, *see infra*, but constructive possession is not limited to documents over which VBA or the Board has control. *See Lang*, 971 F.3d at 1354.

(2021). This Court and the Federal Circuit have routinely held that an error with respect to filing location was not sufficient to render the document ineligible from being reviewed and considered.

In *Jaquay v. Principi*, the Federal Circuit held that a regulation requiring a motion for Board reconsideration to be filed at a particular address was merely for the "administrative convenience" of the Board and did not prevent the Board from considering the motion if it was misfiled with the RO. 304 F.3d 1276, 1286 (Fed. Cir. 2002). In *Brandenburg v. Principi*, the Federal Circuit held that the application of equitable tolling of an NOA "did not hinge on th[e] particularity" of where the NOA was filed. 371 F.3d 1362, 1364 (Fed. Cir. 2004). In *Hunt v. Nicholson*, this Court noted that, instead of considering the location of misfiling, the criteria for applying equitable tolling to a misfiled NOA included that the claimant's intent must be clear and that VA must be put on notice of the claimant's intention. 20 Vet.App. 519, 524 (2006) (citing *Brandenburg*, 371 F.3d at 1364; *Jaquay*, 304 F.3d at 1287-89). In *Kouvaris v. Shinseki*, we reiterated *Jaquay*'s holding, stating that "strict compliance as to where within the Board, *or even within VA*, the motion for [Board] reconsideration must be filed is not required." 22 Vet.App. 377, 381 (2009) (emphasis added) (citing *Jaquay*, 304 F.3d at 1287); *see also Gomez v. McDonald*, 28 Vet.App. 39, 43-44 (2015) (applying the holdings of *Fithian*, *Jaquay*, and *Kouvaris*).[7]

We find the principles espoused in these cases particularly instructive here. Notably, so long as the claimant's intent is clear with respect to a particular filing, the precise location within VA does not matter. As noted above, under the Court's E-Rules, the Secretary was provided notice and a copy of the August 2019 evidence. And it was clear from that evidence that Ms. Varad's intent was to have that evidence considered as demonstrating her entitlement to DIC benefits. Therefore, the Court concludes that the April 2019 evidence, a copy of which was served on VAOGC, was within the Secretary's control, satisfying the second element of constructive possession.

___

[7] We note that in *Reed v. Principi*, the Court appeared to differentiate VAOGC from VBA and the Board when it distinguished *Jaquay* and held that a misfiled NOA with VAOGC was not subject to equitable tolling. 17 Vet.App. 380, 385 (2003). However, in *Rickett v. Shinseki*, the en banc Court formally overturned *Reed*, noting that the distinction made on location of misfiling was inconsistent with post-*Reed* precedent including *Brandenburg* and *Hunt*. *Rickett*, 26 Vet.App. 210, 218 (2013) (en banc). Although *Rickett* was ultimately withdrawn once it was discovered—2 years later—that the veteran had died before issuance of the en banc decision, *Rickett v. McDonald*, 27 Vet.App. 240, 244 (2015), there is no indication that *Reed*'s differentiation of VAOGC has been resurrected. To be sure, although as a three-judge panel we cannot overturn a Court decision, we similarly read the post-*Reed* caselaw, as discussed above, as overtaking any purported distinction *Reed* made based on filing location such that it is not binding on this panel.

12

### C. The April 2019 Medical Evidence Is Relevant and
### Reasonably Connected to Ms. Varad's Claim

As amicus notes, Amicus Br. at 11, the Secretary does not dispute the relevance of the April 2019 evidence. That evidence consists of a nine-page form completed by Dr. Panis, as well as a two-page narrative summary detailing a physical examination of Ms. Varad, a description of her workplace injury, and Dr. Panis's opinion regarding Ms. Varad's overall impairment level, including physical impairments affecting her ability to work. Clearly, because this record provides information pertinent to the factual determination of whether Ms. Varad became permanently incapable of self-support prior to age 18, the document is relevant to her DIC claim. *See AZ*, 731 F.3d at 1311.

Regarding reasonableness, as noted above, in *Bowey* we framed the relevance inquiry as whether it was "reasonable to expect the Secretary or the Board to have investigated, gathered, and considered" the evidence. 11 Vet.App. at 109. And in *Davis*, we noted that the Federal Circuit in *Euzebio* cited favorably to *Bowey*'s framing of this issue. *Davis*, 36 Vet.App. at 150 (citing *Euzebio*, 989 F.3d at 1326; *Bowey*, 11 Vet.App. at 109). Using *Bowey*'s framework, we conclude that the April 2019 medical record is reasonably connected to Ms. Varad's DIC claim.

Initially, we reject amicus's assertion that the Federal Circuit in *Euzebio* equated relevance and reasonableness, that these are essentially the same inquiry, and that relevance, which is undisputed here, suffices to establish the "reasonable connection" element. *See* Amicus Br. at 11-12 (citing *Euzebio*, 989 F.3d at 1321). Although *Euzebio*'s summary of *Bell* at first glance might appear to hinge reasonableness on relevance, caselaw on constructive possession plainly does not support that all relevant documents are constructively part of a record—in fact, it demonstrates that these are separate concepts. In *Lang*, the Federal Circuit stated that "all relevant and reasonably connected VA-generated documents are part of the record." 971 F.3d at 1353-55. In *Euzebio*, the Federal Circuit reiterated that the correct standard, as announced in *Bell* and in *Lang*, was "relevance and reasonableness." 989 F.3d at 1321. And again, in *Euzebio*, the Federal Circuit cited favorably to our caselaw that rejects constructive possession for relevant documents that have too tenuous of a relationship to the claim. *Id.* at 1326. Thus, when *Euzebio* is read as a whole and in light of all caselaw, it is clear that evidence must not only be relevant but it also must be reasonably connected to an appellant's claim. To conclude otherwise would render the reasonableness inquiry a redundancy. If the Federal Circuit believed that all relevant evidence was reasonably connected to an appellant's claim, we would have expected it to say so.

13

Although we reject the amicus argument, we also reject the Secretary's ultimate argument that the April 2019 medical evidence is "not the type of evidence that would be reasonably expected to be part of the record." Sec. First Resp. at 4; *see* Sec. Second Resp. at 5-6; Sec. Resp. to Amicus at 12. The Secretary asserts that pleadings filed with this Court are not required to become part of the record below and that it is consequential that Ms. Varad did not submit the evidence to the Board following the Court's May 2020 decision, despite the Court's instruction that she could submit evidence on remand. Sec. First Resp. at 4. The Secretary also argues that to allow constructive possession of documents that were submitted to the Court but not to VA would be incongruous with appellate practice and procedure. Sec. Resp. to Amicus at 3-6. Finally, he argues that it is "not reasonable to expect [VAOGC], which possesses no adjudicatory authority, to 'investigate, gather[], [or] consider[]' evidence submitted to it during an appeal." *Id*. at 12 (quoting *Bowey*, 11 Vet.App. at 109) (alterations by Secretary). The Secretary's arguments are unpersuasive.[8]

Initially, we note that the Secretary's arguments contradict the Board's routine practice of inserting Court documents into the administrative record following a Court remand of the same issue. In fact, as noted above, the Board in August 2020 informed Ms. Varad that "[c]opies of the Court's order and *other pertinent pleadings* and briefs filed with the Court will be associated with your [VA] claims file for review and consideration by the assigned [Board] Veterans Law Judge" on remand. R. at 22 (emphasis added); *see* R. at 76-84 (including in her claims file the Court's May 2020 decision in *Varad I*), 68-75 (including in her claims file Ms. Varad's reply brief in *Varad I*).

Moreover, the Secretary seems to misunderstand the facts of this case, the temporal posture of the current appeal, and the Court's role with respect to constructive possession. *See* Sec. Resp. to Amicus at 4 (referring to "some new record made initially in the reviewing court") (internal quotation omitted), 5-6 (arguing that "[a] claimant or an attorney could submit any lay or expert testimony to this appellate Court for the first time on appeal, and simply seek a remand for the Board to consider that evidence submitted for the first time to this Court"). To be clear, this Court is not reviewing the contents of a new document submitted during the current appeal—we are determining whether the Board in December 2020, in a case that was remanded from this Court in

---

[8] The Secretary also refers to statutory and regulatory provisions that dictate the closing of the evidentiary record in VA's modernized review system. Because Ms. Varad's appeal is a legacy appeal, the Court will not address this argument.

May 2020, should have considered evidence submitted to this Court and served on the Secretary in June 2019, during the course of her prior Court appeal of this same issue. Considering the scope of the record that was appropriately before the Board in December 2020 when it decided the "permanently incapable of self-support" issue is well within the Court's purview and does not violate section 7252(b) or long-established principles of appellate practice.

To the extent that the Secretary argues that deeming the April 2019 evidence constructively before the Board contravenes statutory and regulatory provisions, established caselaw, and appellate practice, the Court must disagree. First, the Secretary argues that to deem the Board in constructive possession of the April 2019 evidence would violate the restriction that the Court may only consider evidence that was before the Agency. Sec. Second Resp. at 4 (citing section § 7252(b)); Sec. Resp. to Amicus at 4-5. But the Federal Circuit has explained that section 7252(b)'s purpose is to guard against the Court conducting de novo review of the claim based on new evidence, not to prevent effective review of Board decisions. *Euzebio*, 989 F.3d at 1322-23. In this regard, the Court is not conducting a de novo review to determine Ms. Varad's entitlement to benefits in light of the April 2019 evidence but is instead determining whether the Board considered the relevant evidence before it in rendering its December 2020 decision, including evidence over which it had constructive possession.

In addition, the Secretary argues that this Court's decision in *Skaar* runs counter to considering the April 2019 medical record as constructively possessed by the Board in this case. But the Secretary's reliance on *Skaar* is misplaced. The Court in *Skaar*, when remanding to the Board for limited fact-finding, instructed the appellant to submit to the Board evidence that he had submitted to the Court during appellate proceedings. The Court did not explain its reasoning for doing so and nothing in *Skaar* purported to address constructive possession principles or even implicitly consider that issue. Thus, *Skaar* does not stand for the proposition the Secretary seeks to invoke—that records submitted to the Court and legally served on the Secretary during Court judicial proceedings may not be deemed to be in the Board's constructive possession on remand and readjudication of the same claim.

Finally, the Secretary argues that constructive possession in this case runs against agency and appellate practice and that it is not reasonable for VAOGC to have investigated, gathered, and considered the April 2019 medical record because VAOGC has no role in maintaining the administrative record and conducting Agency adjudications. Sec. Resp. to Amicus at 12. But the

reasonableness inquiry is focused on VBA and the Board, entities that do perform those functions. *See Bowey*, 11 Vet.App. at 109. Here, the inquiry the Court conducts is whether it was reasonable for the Board to have included the April 2019 medical evidence as part of the administrative record. Ms. Varad, a pro se claimant,[9] submitted medical evidence during *Varad I* that she believed relevant to her appeal. As noted above, the Board routinely includes Court documents in the administrative record following a Court remand of the same issue and, in this case, specifically notified Ms. Varad that it would be associating "[c]opies of the Court's order and *other pertinent pleadings* and briefs" with her claims file to be considered with the Board's readjudication of her claim. R. at 22 (emphasis added). Since the Board currently has a process to include in the administrative record below, following a Court remand, Court decisions and orders in the case, as well as briefs and relevant pleadings, and in fact apparently informs appellants that it will do so, we conclude that it is reasonable to expect the Board to have included Ms. Varad's June 2019 correspondence wherein she submitted the April 2019 medical evidence, which was publicly available on the Court's electronic docket.

## D. Summary

During the prior Court appeal of her DIC claim, Ms. Varad submitted April 2019 medical evidence detailing her overall physical impairment stemming from the 1971 workplace accident. Although that evidence pre-dated the Board's December 2020 decision, was within the Secretary's control, and was relevant and reasonably connected to her DIC claim, the Board did not consider that evidence in rendering its decision to deny DIC benefits. The Court concludes that, because the April 2019 medical records were constructively before the Board, it erred in failing to consider this potentially favorable evidence. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table). Remand is therefore required for the Board to render a decision in consideration of the entire record before the agency, including the April 2019 medical evidence. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

---

[9] Although Ms. Varad's counsel did not move to withdraw representation until the day following Ms. Varad's June 23, 2019, correspondence, it is clear from her correspondence that she was proceeding without the benefit of counsel in sending that correspondence.

16

## VI. CONCLUSION

After considering the parties' briefs, the amicus brief, the record on appeal, and the governing law, the Court SETS ASIDE the December 15, 2020, Board decision that denied Ms. Varad's entitlement to DIC benefits and REMANDS the matter for readjudication consistent with this decision. Ms. Varad's July 19, 2021, Rule 8 motion is denied.