# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 22-3726

TERRY L. HAMILTON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 23, 2024                                                      Decided May 23, 2024)

*April Donahower*, with whom *Grace Hurley* was on the brief, both of Providence, Rhode Island, for the appellant.

*Mark J. Hamel*, with whom *Richard J. Hipolit*, Deputy General Counsel; and *Mary Ann Flynn*, Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, ALLEN, and TOTH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. GREENBERG, *Judge,* filed an opinion concurring in the judgment.

TOTH, *Judge*: Veterans incurring disability as a result of negligent VA medical treatment may seek a one-time award of damages under the Federal Tort Claims Act (FTCA), monthly compensation under 38 U.S.C. § 1151, or—subject to offset—both. As a precondition to filing an FTCA suit in Federal district court, a veteran must first file an administrative FTCA claim with VA. In this case, veteran Terry L. Hamilton filed such a claim and reached a settlement with VA at the administrative stage. He later filed claims under section 1151 and asked VA to associate any documents involved with his administrative FTCA claim (which we'll call the "FTCA claim file") with his VA benefits claim file (which we'll call the "VA claims file"). In the decision on appeal, the Board acknowledged the FTCA settlement but observed that Mr. Hamilton had not submitted any evidence in connection with it. The Board then denied the section 1151 claims.

On appeal, Mr. Hamilton argues that the whole of the FTCA claim file was constructively part of his VA claims file when the Board adjudicated the section 1151 claims and thus should have been discussed by the Board when it reached its decision. Alternatively, he maintains the duty to assist required VA to obtain the FTCA claim file. The Secretary counters that the entirety

of the FTCA claim file was shielded from disclosure to the veteran—and thus from Board consideration in connection with the merits of the section 1151 claims—under the attorney work-product doctrine generally and the exemption in the Privacy Act specifically as information compiled in reasonable anticipation of litigation.

The proper resolution of this dispute lies somewhere between the parties' positions. We agree with the veteran that the FTCA claim file satisfies the traditional elements for constructive possession. But the attorney work-product doctrine recognizes that at least some of the information generated by members of the legal profession on behalf of their clients in preparation for litigation is protected from disclosure, and the Privacy Act makes clear that this principle applies even when individuals are seeking Federal records related to themselves. The protections of the work-product doctrine and the Privacy Act are relevant to this case. And yet neither the doctrine nor the Privacy Act grants the Secretary a blanket absolution from disclosure of all documents within a folder labeled "FTCA claim file" based on his own say-so. What they protect from disclosure is specific information rather than classes of documents. Thus, when the Secretary invokes the work-product doctrine or the Privacy Act's related exemption to shield an FTCA claim file from disclosure, the Board must assess what information in that file is protected and what information is not protected. Unprotected information must be associated with the VA claims file according to the duty to assist. As a rule, as explained below, facts are disclosable, opinions are not. Because the Agency never attempted—even in a manner consistent with the work-product doctrine or the Privacy Act—to associate Mr. Hamilton's FTCA claim file with his VA claims file, the Board failed to ensure that VA satisfied its duty to assist.

The issues raised in this appeal are novel in the veterans law context. Reconciling VA's obligation to help veterans obtain evidence relevant to their claims with its right to keep certain information confidential will require the Board to assume new responsibilities. The Court therefore offers a few observations—suggestions only—on how those responsibilities might be fulfilled. The Secretary is of course free to fashion procedures for discharging his legal obligations so long as such procedures are consistent with the law as we'll discuss. The Court vacates the Board decision and remands for further proceedings consistent with this opinion.

2

# I. BACKGROUND

## A. *FTCA and Section 1151*

"The FTCA and the veterans' benefits system provide two distinct remedies" for veterans who are injured as a result of VA medical treatment. *Mansfield v. Peake*, 525 F.3d 1312, 1317 (Fed. Cir. 2008). The FTCA waives the sovereign immunity of the United States for certain torts committed by Federal employees. *Brownback v. King*, 141 S. Ct. 740, 746 (2021). It makes the United States liable for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment" to the extent that a private person would be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, veterans who believe they sustained injuries resulting from negligence or malpractice by VA healthcare providers may seek money damages under the FTCA in federal district courts. *See, e.g.*, *Smith v. United States*, 7 F.4th 963, 972 (11th Cir. 2021).

"An action shall not be instituted," however, "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . ." 28 U.S.C. § 2675(a). "The failure of an agency to make final disposition of a claim within six months after it is filed shall . . . be deemed a final denial of the claim for purposes of this section." *Id.* Presentment of an administrative FTCA claim allows an agency, within specified parameters, to "consider, ascertain, adjust, determine, compromise, and settle" such a claim, as warranted. 28 U.S.C. § 2672; *see* 28 C.F.R. § 14.5 (2023). Section 2675(a)'s presentment requirement is a precondition to initiating FTCA litigation.[1] *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that failure to exhaust "administrative remedies" violates section 2675(a)'s "clear statutory command" and requires dismissal of an FTCA suit).

Pertinent Department of Justice (DOJ) regulations govern administrative FTCA claims filed with VA, and VA supplements those rules with its own regulations. 38 C.F.R. § 14.600(b) (2023). So, before filing an FTCA lawsuit in district court, a veteran must first present an administrative claim to the regional counsel for the area within which the alleged negligence or

---

[1] The Courts of Appeals have come to differing conclusions on whether the presentment requirement is a limitation on district courts' jurisdiction or a mandatory claim-processing rule. *See, e.g.*, *Copen v. United States*, 3 F.4th 875, 879-882 (6th Cir. 2021) (discussing the issue). The answer is not dispositive in this case.

malpractice took place. 38 C.F.R. § 14.604(a) (2023). The veteran must also supply specified information related to the claim. 28 C.F.R. § 14.4(b) (2023) (listing all required evidence).

If an FTCA claim alleges medical malpractice, a regional counsel may refer the claim to the Under Secretary for Health "for review and for professional opinion or guidance" regarding "the standard of medical care and treatment, the nature and extent of the injuries, the degree of temporary or permanent disability, the prognosis, the necessity for future treatment or physical rehabilitation, and any other pertinent medical aspects of [the] claim." 38 C.F.R. § 14.601(b) (2023). More generally, a regional counsel may also seek advice from the General Counsel on legal questions. 38 C.F.R. § 14.503(b) (2023). The functions and responsibilities of both the General Counsel and the regional counsels include handling litigation involving VA employees acting in their official capacities and providing legal advice, services, and assistance to the Agency and its personnel. *See generally* 38 C.F.R. §§ 14.500, 14.501 (2023). Regional counsels therefore may be required in FTCA claims "to conduct investigations, examine witnesses, take affadavits, [*sic*] administer oaths and affirmations and certify copies of public or private documents." 38 C.F.R. § 14.501(b). (DOJ regulations offer guidance on how to resolve FTCA claims, but that guidance "does not create or establish any [enforceable] right" by a claimant and "does not require any agency to use any dispute resolution technique or process." 28 C.F.R. § 14.6(a) (2023)).

Title 38 provides another option for veterans injured by VA medical personnel. Benefits will be awarded for (1) additional disability that (2) is not the result of a veteran's willful misconduct, (3) was "caused by hospital care, medical or surgical treatment, or examination furnished the veteran under any law administered by the Secretary," and (4) was proximately caused by "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of [VA] in furnishing" such care, treatment, or examination. 38 U.S.C. § 1151(a)(1); *see generally Ollis v. Shulkin*, 857 F.3d 1338 (Fed. Cir. 2017).

Although a veteran may bring both an FTCA claim and a section 1151 claim with respect to the same set of circumstances, they differ in material ways. The applicable standards of proof, available forms of relief, and—as noted above—procedures governing the claims are distinct. Unlike an FTCA claim, the duty to assist attaches to a section 1151 claim. *Trafter v. Shinseki*, 26 Vet.App. 267, 278 (2013). And an award of section 1151 benefits must be offset by the total amount included in an FTCA judgment, settlement, or compromise. 38 U.S.C. § 1151(b)(1); 38 C.F.R. § 3.362(b) (2023).

4

B. *Mr. Hamilton's Case*

Terry Hamilton served in the Army from 1969 to 1971. This case stems from events at VA medical centers in 2013. Between February and June of that year, Mr. Hamilton was seen by VA medical staff at least seven times. During these visits, he reported dizziness, back pain, lack of energy, loss of appetite, and weight loss as significant as 30 pounds in two months. In May, after undergoing a back x-ray he was diagnosed with degenerative disc disease. The same month, his niece—an oncology nurse—called the VA nurse line concerned that many of her uncle's symptoms were consistent with a tumor. On June 6, his VA primary care physician diagnosed pancytopenia (insufficient blood cells), referred him to a hematologist, and instructed him to follow up with the VA clinic in one to two months for a CT scan. However, two days after seeing his primary care provider, Mr. Hamilton was admitted to a non-VA emergency room because his symptoms hade exacerbated. He was diagnosed with stage 4 non-Hodgkin's lymphoma (NHL) after scans revealed "very large" bilateral adrenal masses and enlarged lymph nodes. R. at 943. He underwent cancer treatment, including chemotherapy, and thereafter developed atrial fibrillation and neuropathy in his toes. In September, he filed an FTCA claim with VA, alleging that VA's failure to diagnose his cancer constituted negligence. VA settled his claim in 2014.

In December 2015, Mr. Hamilton filed a claim for compensation under section 1151 for NHL, atrial fibrillation, and bilateral big toe neuropathy. A VA examiner opined that "the claimed disability . . . was not caused by or worsened by VA treatment" and that there "was no evidence of carelessness, negligence, lack of skill or similar incidence of fault on the part or the attending VA staff." R. at 360. She reasoned that VA did not fail to timely treat or diagnose the veteran's condition because, "after presentation of complaints, testing was appropriately done which showed pancytopenia." *Id.* "Care," she continued, "is usually given on the basis of clinical presentation," and the veteran's "treatment at the VA was appropriate in [her] opinion." *Id.* The regional office (RO) relied on this opinion to deny the section 1151 claims. He appealed to the Board.

At a September 2021 Board hearing, the veteran raised the issue of his FTCA settlement. The Board member advised him to coordinate with his representative and the RO "to get the tort settlement . . . from 2014 associated with the record." R. at 26; *see* R. at 38 ("I know we've said it a few times already, but it is very important for you to get the tort settlement, or tort claim, from 2014 in to . . . the RO.").

5

But the FTCA claim file was not associated with the record, and the Board ultimately denied the claim. Specifically, the Board relied on the April 2016 opinion to find that there was no evidence that "treatment, or purported lack of treatment, caused an additional disability." R. at 12. In reviewing the evidence, the Board highlighted that there was "no contrary medical opinion" in the record and that Mr. Hamilton never submitted evidence regarding his FTCA settlement. R. at 9, 12. The Board did not discuss whether VA had a duty to assist the veteran in obtaining records related to his FTCA settlement with VA or whether those records were already constructively part of the record. Mr. Hamilton appealed.

## II. ANALYSIS

Mr. Hamilton argues that the FTCA claim file was constructively part of his VA claims file and that the Board therefore had an obligation to discuss its contents when adjudicating the section 1151 claims. To the extent that the contents of the FTCA claim file are unknown, the veteran contends that the Board should have ensured under the duty to assist that the FTCA claim file was made part of the record before adjudicators. The Secretary responds that the FTCA claim file was not constructively part of the VA claims file—and thus that the duty to assist did not mandate its association—because the FTCA claim file is wholly shielded from disclosure to the veteran under the work-product doctrine and section 552a(d)(5) of the Privacy Act. The veteran replies that doctrine and section 552a(d)(5) are simply inapplicable here and so the FTCA claim file cannot be withheld. At least, he argues, the file is not wholly shielded.[2]

### A. *Duty to Assist and Constructive Possession*

The Secretary has a statutory duty to make "reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for benefits." 38 U.S.C. § 5103A(a)(1). This duty includes assistance in obtaining relevant service medical records and VA medical or examination records or "[a]ny other relevant records held by any Federal department or agency that the claimant adequately identifies and authorizes the Secretary to obtain." § 5103A(c)(1)(C). When VA attempts to obtain records held by a Federal department or agency,

---

[2] During initial briefing, the Secretary indicated that the veteran's FTCA claim file might have been destroyed under VA's record retention policy. Secretary's Br. at 13. The appellant argued that the destruction of his file would deprive him of due process in the adjudication of his section 1151 claim and warrant an adverse inference against the Agency. Appellant's Motion for Initial Review by Panel at 1. Since the Secretary informed the Court that VA retained an electronic copy of the claim file, however, the Court does not reach these issues.

its efforts "shall continue until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." § 5103A(c)(2); *see* 38 C.F.R. § 3.159(c)(2) (2023). Neither section 5103A nor its implementing regulations explicitly state that VA's duty to assist will be curtailed if certain records might be privileged or otherwise protected from disclosure.

Related to the duty to assist is the doctrine of constructive possession. The doctrine holds that "evidence that is within the Secretary's control and could reasonably be expected to be a part of the record before the Secretary and the Board, is constructively part of the administrative record." *Euzebio v. McDonough*, 989 F.3d 1305, 1319 (Fed. Cir. 2021). Stated differently, "all relevant and reasonably connected VA-generated documents are part of the record and therefore constructively known by the VA adjudicator," even if not physically part of a VA claims file. *Lang v. Wilkie*, 971 F.3d 1348, 1354 (Fed. Cir. 2020). In concert with the duty to assist, the doctrine "provides a safeguard that ensures all record documents *reasonably expected* to be part of a veteran's claim are included in the administrative record." *Conyers v. McDonough*, 91 F.4th 1167, 1171 (Fed. Cir. 2024) (emphasis added).

When VA has breached its duty to assist "by omitting from the record documents within its control that could reasonably be expected to be part of a veteran's claim, the constructive possession doctrine provides a remedy." *Euzebio*, 989 F.3d at 1321. When this Court determines that the Board had constructive knowledge of evidence relevant and reasonably connected to a claim but failed to consider it, the Court must take appropriate action. *Id.* In circumstances where the evidence at issue is non-public documents that are not yet actually known by the relevant adjudicator, the proper remedy is to remand for VA to obtain the documents and associate them with the claims file for the adjudicator's consideration. *See, e.g.*, *Dunn v. West*, 11 Vet.App. 462, 466–67 (1998); *see also Euzebio*, 989 F.3d at 1325 n.11 ("The constructive possession doctrine does not compel a specific result, only that the VA and the Board fulfill its statutory duty to gather and weigh all relevant evidence in reaching its determination.").

Turning to Mr. Hamilton's case, we conclude that his FTCA claim file appears to meet the criteria to be deemed constructively part of his VA claims file. There is no debate that the FTCA claim file is within the Secretary's control, since he has conceded that VA retains an electronic copy of that file. Secretary's September 25, 2023, Response at 1. Nor is there any dispute that the contents of the FTCA claim file are relevant to the veteran's section 1151 claim. *See Golz v.*

*Shinseki*, 590 F.3d 1317, 1321 (Fed. Cir. 2010) (defining "relevant records" as those that "relate to the injury for which the claimant is seeking benefits and have a reasonable probability of helping substantiate the veteran's claim"). The central issue of Mr. Hamilton's FTCA claim was whether VA negligence caused his medical disability—a key question in determining entitlement to section 1151 benefits. *Compare* 38 C.F.R. § 14.600(a) (2023) (noting that the FTCA compensates for "personal injury . . . caused by the negligent or wrongful act or omission of a Government employee"), *with* 38 U.S.C. § 1151(a) (providing compensation for additional disability proximately caused by "carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of" VA). Finally, the record clearly reflects that Mr. Hamilton put VA adjudicators, including the Board, on notice of the FTCA claim file's existence, thereby adequately identifying any records contained therein. *See* R. at 26–27, 937; *cf.* 38 U.S.C. § 5103A(c)(1)(C). (We note this fact for its persuasive value—actual notice is not a requirement under the statute. *Lang*, 971 F.3d at 1354.) Thus, absent any other legal consideration, the veteran's FTCA claim file was constructively part of his VA claims file.

## B. *Applicability of Exemptions from Disclosure*

But that is not the end of the analysis. Even if the contents of Mr. Hamilton's FTCA claim file could be deemed part of his VA claims file under the constructive possession doctrine, the Secretary argues that the FTCA claim file is nevertheless protected from disclosure to the veteran—and hence from consideration by VA adjudicators—by the work-product doctrine and the relevant exception under the Privacy Act. These protections, in the Secretary's view, mean that the FTCA claim file could not "reasonably be expected to be part of the record" under the constructive possession doctrine or be obtained pursuant to "reasonable efforts" under the duty to assist. Secretary's Br. at 13–14 (quoting *Euzebio*, 969 F.3d at 1318, and section 5103A(a)(1)).

The work-product doctrine is a new concept in this Court. The vast majority of our cases concern rules and procedures exclusive to the non-adversarial VA benefits adjudication scheme. But a claim under the FTCA is not part of that scheme, and the Secretary's arguments against disclosure pertain not to Mr. Hamilton's section 1151 claims but to his FTCA claim. It is in the FTCA context that we must consider the Secretary's arguments.

As a general matter, the work-product doctrine permits a party to "protect 'documents and tangible things' prepared in anticipation of litigation that are both non-privileged and relevant." *In re EchoStar Commc'ns. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (quoting Fed. R. Civ.

P. 26(b)(3)). Although codified in Rule 26 of the Federal Rules of Civil Procedure, the work-product doctrine does not originate there. In fact, the Supreme Court officially recognized the doctrine in *Hickman v. Taylor*, 329 U.S. 495 (1947), as a limitation on the liberal discovery mechanisms created by the (then-fledgling) Rules. The Court explained that the doctrine stemmed from the core duties of the legal profession:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. . . . Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Id.* at 510–11.

*Hickman* defined the scope of the work-product protection in two instructive ways. First, it recognized that a broad range of materials constitute attorney work product: "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible [things]." *Id.* at 511. Thus, the Court did not limit the doctrine solely to materials that memorialized an attorney's legal theories and strategy but recognized that work product also includes factual materials assembled by an attorney, such as the signed survivor statements and witness interview memoranda collected by the attorney in that case. *See id.*

Second, the Court instructed that, while the work-product doctrine shielded a broad range of materials from disclosure, the protection was not absolute. Rather, a party may discover "relevant and non-privileged *facts* hidden in an attorney's file" upon demonstrating sufficient need. *Id.* (emphasis added). As codified in Rule 26 the party must demonstrate "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). And although factual work product can be discovered "upon a showing of substantial need and undue hardship, mental

9

process work product is afforded even greater, nearly absolute, protection." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (en banc), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016); *cf.* Fed. R. Civ. P. 26(b)(3)(B) ("If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.").

The Privacy Act of 1974 contains a disclosure carve-out similar to the general work-product doctrine. This statute is the authority under which veterans and their representatives obtain copies of the veterans' VA claims files. *See* 5 U.S.C. § 552a(d)(1); *Green v. McDonald*, 28 Vet.App. 281, 291 (2016); 38 C.F.R. § 1.500(b) (2023) ("A claimant may not have access to or custody of official [VA] records concerning himself or herself nor may a claimant inspect records concerning himself or herself. Disclosure of information from [VA] records to a claimant or his or her duly authorized agent or representative may be made, however, under the provisions of [38 C.F.R.] §§ 1.501 through 1.526."). But the right of a veteran to access the veteran's own VA records is nevertheless subject to the exception that "nothing in [section 552a] shall allow an individual access to any information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). This is often referred to as "exemption five." No Federal court considering the exemption has found that it provides less protection from disclosure than the general work-product doctrine. *See, e.g.*, *Martin v. Off. of Special Counsel, MSPB*, 819 F.2d 1181, 1187–88 (D.C. Cir. 1987); *Hernandez v. Alexander*, 671 F.2d 402, 408 (10th Cir. 1982). And the Secretary does not argue here that it provides more protection.

Thus, while the general work-product doctrine and exemption five of the Privacy Act are not coextensive, both protect from disclosure materials prepared in anticipation of what the former calls "litigation" and the latter calls "a civil action or proceeding." We see no reason why the Secretary cannot invoke these generally applicable legal rules with respect to an FTCA claim file. (Of course, whether the invocation is proper with respect to any particular information in the FTCA claim file is for an adjudicator—in the first instance, the Board—to resolve.)

Mr. Hamilton argues that the work-product doctrine and exemption five are inapplicable here and thus that an FTCA claim file should be wholly disclosable to a veteran and made part of the VA claims file. Those arguments are not persuasive.

10

He first contends that the "principal flaw" in the Secretary's invocation of the work-product doctrine and exemption five is that his FTCA claim file was *not* compiled "'in preparation of litigation of a medical malpractice lawsuit.'" Reply Br. at 5 (quoting Secretary's Br. at 9). We disagree. The presentment of an administrative FTCA claim to an agency is a clear precondition to filing a suit in district court. 28 U.S.C. § 2675(a); *McNeil*, 508 U.S. at 113. It allows the agency to "consider, ascertain, adjust, determine," and—if warranted—"compromise" and "settle" such a claim. 28 U.S.C. § 2672. Or not. The Secretary proffers that, upon receipt of an FTCA claim, VA attorneys may need to obtain and review medical records and information relating to economic losses; to determine the employment status of an alleged VA tortfeasor; to interview health care providers, the claimant, and other witnesses; to obtain and review privileged quality assurance documents and medical opinions; to investigate applicable state law and other germane considerations. Secretary's Br. at 10–11. Whatever documents are compiled in connection with a specific FTCA claim, counsel will have to analyze their relevance and relative strength and offer a legal opinion to the Secretary on the proper response to the claim. Such actions by an agency's lawyers are classic examples of preparation for litigation (or, said differently, a civil action). *See Hickman*, 329 U.S. at 511. The Secretary has a legitimate interest in the candor of VA attorneys—candor that may be chilled if claimants are given unfettered access to FTCA claim files. As the Supreme Court cautioned, in those circumstances "much of what is now put down in writing would remain unwritten" and "[i]nefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial." *Id.*

Nor does that preparatory character disappear simply because a claim is settled. Mr. Hamilton's purpose in filing the FTCA claim with VA may have been "avoiding litigation," Reply Br. at 6, but the Secretary's purpose in compiling the claim file was to be able to decide whether the proper course was to settle—and if so, in what amount—or to proceed with litigation if pressed by the veteran. VA attorneys cannot be expected to know the outcome of administrative FTCA claims when they begin to assemble the claim files. Nor, even when a settlement is offered, can VA know whether its terms will be acceptable to a claimant. The Federal Supplement is replete with decisions resolving FTCA lawsuits filed by veterans alleging negligent treatment by VA medical staff. All those lawsuits were necessarily preceded by administrative FTCA claims that were not settled by VA. It would be nonsensical to treat such claim files as compiled in anticipation of litigation but not those in cases where the claims were settled at the administrative level. The

11

legal status of an FTCA claim file cannot be contingent on the claim's outcome. Indeed, such a rule would perversely incentivize VA against settling such claims if ensuing litigation were the only guarantee against the disclosure of legal work product.

Mr. Hamilton also maintains that the Court "should reject the Secretary's attempted reliance on FED. R. CIV. P. 26(b)(3) as a shield from compliance with the duty to assist." Reply Br. at 9. But we reiterate that, although the work-product doctrine may be codified in Rule 26, it does not emanate from Rule 26. *See Hickman*, 329 U.S. at 510–12. It is a corollary to a lawyer's duties when acting on a client's behalf in an adversarial context. The veteran does not argue that government attorneys cannot invoke the work-product doctrine. Nor does he contend that the lawyers who handle administrative FTCA claims are acting in furtherance of the Secretary's duty to assist veterans in developing and adjudicating claims for VA benefits. Since an administrative FTCA claim is not part of VA's benefits scheme, there is no legal basis to deny VA the protections from disclosure that any other Federal agency could claim with respect to an FTCA claim file. In other words, the duty to assist under section 5103A does not nullify the limitations on disclosure under the work-product doctrine and section 552a(d)(5) with respect to an FTCA claim file.

Accordingly, the Court concludes that the Secretary may *invoke* the work-product doctrine and exemption five to argue that the contents of the FTCA claim file should not be disclosed to a veteran, made part of the VA claims file, or considered by VA adjudicators when adjudicating the merits of a section 1151 claim.

## C. *Extent of Exemptions from Disclosure*

Again, however, that conclusion does not resolve this case. While the work-product doctrine and the Privacy Act may be applied to an FTCA claim file as a general principle, non-disclosability must be assessed on an individualized basis according to the nature of the document or information in question. In other words, neither the doctrine nor the Privacy Act exemption is a free pass for the Secretary to declare the entirety of the FTCA claim file off limits.

The Secretary is in a unique position. Like all Department heads, he has a duty to consider FTCA claims fully and responsibly. And that entails the right to invoke generally available legal protections that enable him to do so. But he also has a duty to assist veterans (and other claimants) in seeking benefits to which they may be entitled. Veterans are entitled to a fair adjudication of their cases based on records that are as complete as reasonable efforts by VA allow. *See* 38 U.S.C. § 5103A(a)(1). The Court must be cognizant of these competing responsibilities.

12

With these considerations in mind, we conclude first that opinion work product in an FTCA claim file is protected from disclosure to a veteran and not considered by the Board in connection with the merits of a benefits claim. Opinions, as well as mental impressions, conclusions, and legal theories reflected in documents such as "interviews, statements, memoranda, correspondence, [and] briefs" prepared in anticipation of an adversarial proceeding are in the heartland of information that the work-product doctrine recognizes as exempt from disclosure. *Hickman*, 329 U.S. at 511; FED. R. CIV. P. 26(b)(3)(B). Such information is given "nearly absolute[ ] protection." *In re Seagate*, 497 F.3d at 1375. And, as noted above, there is no reason to read exemption five of the Privacy Act as narrower than the work-product doctrine. Mr. Hamilton seems to agree that, if the work-product doctrine and section 552a(d)(5) apply here—as we've concluded they do—then attorney opinions in the FTCA claim file is shielded from disclosure.

We also conclude that fact work product contained in the FTCA claim file generally should not be shielded from disclosure. Several considerations lead us to this conclusion. *Hickman*, 329 U.S. at 511–12, and Rule 26(b)(3)(A)(ii) both acknowledge that factual work product may be disclosed upon a showing of substantial need. Moreover, substantial need can generally be imputed to veterans who are seeking benefits under section 1151 by virtue of the overall pro-claimant nature of VA proceedings and the Agency's obligations under the duty to assist. *See, e.g.*, *Moore v. Shinseki*, 555 F.3d 1369, 1374–75 (Fed. Cir. 2009) ("Because many veterans lack the knowledge and resources necessary to locate relevant records, Congress has appropriately placed the burden on the VA to ensure that all relevant service medical records are obtained and fully evaluated.").

Additionally, VA has not exercised its rulemaking authority in a way that indicates its intention to prevent disclosure of factual information in an FTCA claim file. For example, a DOJ regulation adopted by VA, *see* 38 C.F.R. § 14.600(b), already specifies that certain information in an FTCA claim file must be disclosed. A "claimant may be required to submit to a physical or mental examination by a physician employed by the agency or another Federal agency," and "[a] copy of the report of the examining physician *shall* be made available to the claimant upon the claimant's written request provided that" the claimant complies with certain requirements. 28 C.F.R. § 14.4(b)(1) (emphasis added). Similarly, VA has by regulation made tort claim peer reviews privileged. 38 C.F.R § 17.501(a)(1)(ix) (2023). These are "review[s] of the care provided in cases in which malpractice claims have been filed to identify, evaluate, and, where appropriate, correct circumstances having the potential to adversely affect the delivery of care." VHA

13

DIRECTIVE 2008-077, at 2 (Nov. 7, 2008). But such privileged "[r]eviews conducted entirely for other purposes, such as assisting the United States in consideration of tort claims or in defense of litigation under the Federal Tort Claims Act, are not included." *Id.* (emphasis omitted).

Thus, factual work product in an FTCA claim file is not shielded from disclosure to the veteran or consideration by the Board on the merits of a section 1151 claim. And since the Board is deemed to have constructive knowledge of such information, the duty to assist requires that it be made part of the VA claims file so that it can be given proper consideration.

Admittedly, "the line between 'factual' work product and 'opinion' work product is not always distinct." *In re EchoStar Communs. Corp.*, 448 F.3d at 1302. That is why here, as is generally the case when the work-product protection is invoked, applying it to specific records is a fact-intensive inquiry. But this presents a problem, because no one—not the Court, not the Board, not Mr. Hamilton, and not counsel for the Secretary—is quite sure of what is contained in the veteran's FTCA claim file. Accordingly, this case must be remanded to the Board so that it can ensure that Mr. Hamilton's FTCA claim file is associated with his VA claims file consistent with the parameters we've laid out above. *Cf. Hood v. Shinseki*, 23 Vet.App. 295, 302 (2009) (remanding for the Board to resolve whether a VA investigative medical report should be considered a "quality assurance" report and shielded from disclosure in connection with a veteran's section 1151 claim).

### D. *Guidance on Remand*

Because the tasks the Agency will have to undertake on remand are novel, the Court offers some thoughts as to how those tasks might be fulfilled. In cases where we have encountered an unusual procedural issue, we have consulted the Federal Rules of Civil Procedure for guidance, *see, e.g.*, *Skaar v. Wilkie*, 32 Vet.App. 156, 178 (2019), and in this context we consider Rule 26. The thoughts and guidance that follow are suggestions only.

A typical civil case looks like this: a plaintiff files a complaint and the defendant must turn over the initial discovery, what are now referred to as initial disclosures. *See* FED. R. CIV. P. 26(a)(1). If the defendant believes some relevant, discoverable records are protected, the defendant must submit a privilege log. And the same pattern obtains when, after the initial disclosures, the plaintiff seeks documents or information through the discovery devices the Federal Rules provide. *See, e.g.,* FED. R. CIV. P. 34. Though the Federal Rules do not establish an explicit procedure for asserting and substantiating privilege or work-product claims, a typical log identifies

14

at least (1) the nature of the privilege or protection claimed, (2) the name of the person who made and received the document or communication, (3) the date and place of the document or communication, and (4) the document or communication's general subject matter. *See* Fed. R. Civ. P. 26(b)(5)(A); *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 483 (D. Md. 2014). If there is a dispute, then a district court judge can perform an in camera review of the materials to determine whether and to what extent the privilege applies and can then direct the party claiming the privilege to hand over all unprotected materials and facts. *See United States v. Zolin*, 491 U.S. 554, 565–71 (1989); *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 227 (D.D.C. 2015). Discovery decisions—like whether material is protected work product or exempt from disclosure under the Privacy Act—are subject to appellate review. *See Louis v. Dep't of Labor*, 419 F.3d 970, 977 (9th Cir. 2005) ("[R]eview of agency decisions under FOIA and the Privacy Act is de novo."); *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 92 (3d Cir. 1992) ("The proper standard of review for discovery orders is the 'clearly erroneous or contrary to law' standard."); *Savada v. United States Dep't of Defense*, 755 F. Supp. 6, 9 (D.D.C. 1991).

That process presents a solid framework on which VA could base its own approach to resolving the disclosure issues in this case. First, 38 C.F.R. § 1.511 seems to appoint a VA regional counsel as the appropriate record custodian of the tort claims file. 38 C.F.R. § 1.511(a)(2) (2023) ("Where a claim under the provision of the Federal Tort Claims Act has been filed . . . no information, documents, reports, etc., will be disclosed except through the Regional Counsel having jurisdiction, who will limit the disclosure of information to that which would be available under discover proceedings, if the matter were in litigation."). VA adjudicators at the agency of original jurisdiction responsible for developing the VA claims file can request the FTCA claim file from the regional counsel having jurisdiction over Mr. Hamilton's case. A regional counsel will then have several options: turn over the claim file in its entirety, or only those portions of the file that counsel believes are unprotected and submit a privilege log of the withheld information. If the veteran disputes the extent of the regional counsel's claimed privilege, the Board can conduct an in camera-style review of the contested materials and make a formal, written decision as to what is disclosable and what is not. This decision should be sufficiently detailed to facilitate review by this Court—including an explanation of the relevant privilege and why the material is protected. The Board should be guided by the basic principle that, while *materials* that constitute attorney work product are protected from discovery, the underlying *facts* of those materials may still be

15

discoverable. *See* FED. R. CIV. P. 26(b)(3); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd*, 270 F. Supp. 3d 220, 226 (D.D.C. 2017). Consistent with its reasons or bases requirement, the Board should then weigh the disclosable evidence in adjudicating Mr. Hamilton's section 1151 claims. *See Faust v. West*, 13 Vet.App. 342, 357–58 (2000) ("As a general matter, VA should not consider in its decisions any evidence not made available to the claimant."). We reiterate that such an approach is not the only one the Board could adopt. The key is that VA must adopt procedures that sufficiently ensure that the legal structure we have outlined in this opinion is implemented.

### III. CONCLUSION

Based on the foregoing, the Board's May 17, 2022, decision is VACATED, and the matters are REMANDED for further proceedings consistent with this opinion.

GREENBERG, *Judge,* concurring in the judgment: I agree with the majority's decision but write separately for the following reason. Congress has provided that "[t]he Secretary *shall* make reasonable efforts to assist a clamant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary." 38 U.S.C. § 5103A(a)(1) (emphasis added). This assistance includes obtaining "[a]ny . . . relevant records held by any Federal department or agency that the claimant adequately identifies and authorizes the Secretary to obtain. 38 U.S.C. § 5103A(c)(1)(C). Congress was clear that this duty to assist pertaining to these records "shall continue until the records are obtained unless it is reasonably certain that such records do not exist or that further efforts to obtain those records would be futile." 38 U.S.C. § 5103A(c)(2). There is no statutory limitation that includes the work-product doctrine; instead, the Secretary attempts to shirk VA's duty to help claimants by hiding behind *Hickman v. Taylor,* 329 U.S. 495 (1947), a case that was decided 41 years before the agency was subject to judicial review.

Here, Congress was "clear and unambiguous" for a very important reason. *See Conroy v. Aniskoff,* 507 U.S. 511, 514 (1993). Veterans are a statutorily favored class and deserve the unfettered help of the government in obtaining deserved benefits. After all, it's this class of people who served their country without limitation, other than death or disability caused by their service. "Congress imposed on the VA an affirmative duty to assist—not impair—veterans seeking evidence for their disability claims." *Mathis v. Shulkin*, 137 S. Ct. 1994, 1995 (2017) (Gorsuch, J., dissenting); *see also Buffington v. McDonough,* 143 S. Ct. 14, 15 (2022) (Gorsuch, J., dissenting)

(quoting *Buffington v. Wilkie,* 31 Vet.App. 293, 307 (2019) (Greenberg, J*., dissenting), aff'd sub nom. Buffington v. McDonough*, 7 F.4th 1361 (Fed. Cir. 2021)); *see also Taylor v. McDonough*, 71 F.4th 909, 946 (Fed. Cir. 2023). The Secretary's position here is contrary to the duty to assist and impairs a veteran seeking evidence for his claim.  For this reason, I write separately.